**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 14-cv-01473-RM-KMT

KING SOOPERS, INC., a Division of DILLON COMPANIES, INC.,

Plaintiff,

v.

UNITED FOOD and COMMERCIAL WORKERS INTERNATIONAL UNION,
LOCAL NO.7, AFL-CIO, CLC,

Defendant.

---

**ORDER RE: DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S SECOND AND SIXTH CLAIMS**

---

### I.   INTRODUCTION

This matter is before the court on defendant United Food and Commercial Workers International Union, Local No.7, AFL-CIO, CLC's (defendant) Motion to Dismiss plaintiff King Soopers, Inc., a Division of Dillon Companies, Inc.'s (plaintiff) Second and Sixth claims pursuant to Fed R.Civ.P.12(b)(6), for failure to state a claim. (ECF Nos. 25 and 26).

Plaintiff's Complaint essentially seeks to vacate "an improper arbitration order entered in a proceeding alleging a violation of a contract between an employer and a labor organization representing employees . . . " and to obtain damages for "the Union's breach of the CBA [Collective Bargaining Agreement]." (ECF No.1, pp.1, 17). Plaintiff asserts six claims against defendant: (1) Arbitrator "arbitrarily and unilaterally . . .without authority  . . . require[ed] . . .grievance to be arbitrated and finalized within four years after [grievant] was disciplined"

1

without authority of the CBA; (2) Arbitrator engaged in *ex parte* communications with defendant which prejudiced plaintiff; (3) Arbitrator exceeded her authority under the CBA by determining that plaintiff's representative and/or employees were not credible; (4) Arbitrator exceeded her authority under the CBA by setting the arbitration for a date on which a party (plaintiff) was unavailable; (5) Arbitrator exceeded her authority under the CBA and industry common law by scheduling the arbitration for a date she knew plaintiff objected to and was unavailable for, and (6) defendant's "mass grievance filings and arbitration demands . . .causes [plaintiff] to suffer anti-company publicity and a severe economic burden . . . ." (ECF NO.1, pp.11-17).

## II. BACKGROUND

The following facts are gleaned from plaintiff's Complaint and, as required, are construed in the light most favorable to plaintiff. *Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007).

The relationship between the parties is governed by the CBA which provides for resolution of disputes through a grievance procedure and ultimately before an arbitrator. (ECF No.1, p.2). Article 44 of the CBA provides that there "shall be no lockout, strike, picketing, boycotting, stoppage of work, anti-company publicity or other economic action of whatsoever nature against the Company." (ECF NO.1-1, p.56).

The parties' practice is to schedule arbitration hearings in the order that grievances are filed which means they regularly schedule the hearings for many months after engaging an arbitrator. (ECF No.1, p.3). On or about February 7, 2014, the National Labor Relations Board Acting Regional Director Kelly Selvidge affirmed the parties' scheduling practice. (ECF NO.1, p.4; ECF No. 35, p.3). During the years between September 1, 2012 and August 31 2013, the defendant requested arbitration in 374 cases against plaintiff. *Id.*

The instant matter involves plaintiff's April, 2010, demotion of an employee (grievant) from Grocery Manager to All Purpose Clerk. (ECF No. 1, p.3; ECF No.35, p.3). Plaintiff also suspended this grievant for six days. *Id.* The parties were unable to resolve the resulting grievance and defendant requested arbitration on or about September 24, 2010. *Id.* Together on or about June 18, 2013, the parties selected Arbitrator Hanley (the Arbitrator) to hear their case. *Id.* In September 2013, the Arbitrator requested that the parties supply dates on which they would be available for arbitration. *Id.*

Due to the number of grievances pending in September 2013, plaintiff informed the Arbitrator that it was not available to arbitrate this grievance until August-September 2014. *Id.* The Arbitrator informed the parties she was also available in those months however, defendant did not confirm any of those dates. (ECF No.1, pp.4-5).

Plaintiff informed the Arbitrator on or about September 28, 2013, that it was no longer available and provided dates on which it was available in November-December 2014 or January 2015. (ECF No.1, p.5). The Arbitrator responded that those dates were open for her as well. *Id.* Defendant responded with an alternate request for arbitration dates to be set in November-December of 2013, which would put this grievance ahead of others already in the scheduling queue. *Id.*

On or about October 1, 2013, plaintiff informed the Arbitrator and defendant that it was not available to arbitrate this matter prior to November 2014. (ECF No.1, p.6). The Arbitrator again informed the parties that she was available for dates in November-December 2014 or January 2015. *Id.* Plaintiff responded with the dates within that time frame on which it was available however defendant remained resolute in its request for dates to be set in November-

December of 2013. *Id.* On or about December 3, 2013, the Arbitrator scheduled the arbitration for November 14, 2014. (ECF No.1, p.6; ECF NO.35, p.4)

The next day plaintiff notified the Arbitrator that there had been another arbitration scheduled for that November 14th date and requested that the arbitration in this matter be re-set for December 5, 2014. (ECF NO. p.7; ECF No.35, p.4). The Arbitrator made several attempts to ascertain the defendant's position regarding the rescheduling. *Id.* Defendant responded on or about December 9, 2013, saying that it did not agree to the requested rescheduling. *Id.*

That same day the Arbitrator inquired about when the relevant discipline had occurred and upon learning that it had occurred in April 2010, stated that "if the parties cannot agree on a date and time before Friday April 11, 2014 – four years after the discipline was issued – I will order the date and time myself." *Id.* She further stated that "[d]iscipline was imposed in 2010. Four years is long enough, too long. Arbitration of discipline that stale in November 2014 or later is improper and [she would] not be a party to it." (ECF No.1, p.8). On or about December 24, 2013, the Arbitrator sent the parties an email directing them to provide a mutually agree upon date that must be no later than April 15, 2014. *Id.*

On or about December 26, 2013, plaintiff responded to the Arbitrator's email and reiterated that due to the parties' arbitration queue and pressing needs of running a business, it was not available until the scheduled hearing on November 14, 2014. *Id.* Plaintiff further stated that:" [s]hould you set this matter for a hearing on a date the Company is not available, the Company does not intend to attend the hearing and will challenge any adverse ruling in federal court. Again we ask that you leave the hearing date as scheduled on November 14, 2014." *Id.*

The Arbitrator responded that she would not entertain the November date as it was improper to delay an arbitration hearing for more than four years. (ECF No.1, p.9). Plaintiff

informed the Arbitrator that it did not believe she had the authority to "unilaterally set a matter for hearing on any date which one party was not available." *Id.* The Arbitrator suggested that the parties might settle some of the cases currently pending in order to clear their calendar, noted that neither party had any arbitration scheduled for weekends (Saturday or Sunday), suggested that the parties could prepare their witnesses in the evenings or on an earlier weekend and set the hearing for Saturday, April 5, 214 at 9:00 am. *Id.* Plaintiff objected to the date stating it was unavailable and that setting this arbitration before other older grievances would "giv[e] preference to this grievant without any reason or justification." (ECF No.1, p.8).

Over plaintiff's objection, the Arbitrator on March 3, 2014, asked the parties to determine a location for the April 5th hearing. *Id.* On or about March 12, 2014, plaintiff informed the Arbitrator that it had no available dates prior to May 31, 2014 and reiterated its objection to the April date selection. (ECF No.1, p.10). In subsequent emails, the Arbitrator stated that plaintiff's "labor relations representative is available on Saturday April 5. He/she simply does not want to work on Saturday. This is unreasonable inasmuch as the rest of us stand ready to do so. As I wrote earlier today, sometimes work comes first." *Id.* On or about March 14, 2014, plaintiff reiterated its objection to the April 5th hearing date on the basis of unavailability. *Id.*

On April 5, 2014, the Arbitrator convened the hearing and conducted the arbitration. *Id.* Defendant was present at the hearing, entered exhibits, called witnesses and over defendant's objections; the Arbitrator personally examined each witness. *Id.* Plaintiff was not present. *Id.* At the conclusion of the hearing the Arbitrator ordered plaintiff to: (1) reinstate the grievant; (2) pay him for pay lost due to his demotion and suspension and (3) remove all references to [his] demotion and suspension from his personnel file. (ECF No.1, pp.10-11).

The Arbitrator confirmed this order in her Decision and Award issued on April 7, 2014. (ECF No. 1, p.11). In this decision the Arbitrator concluded that: all defendant's witnesses were credible; plaintiff's witnesses would have had suspect credibility; one of plaintiff's witnesses was "a party to an injustice" and concluded that plaintiff's position was without merit. *Id.*

### III. LEGAL STANDARDS

**A.    Standard for Fed.R.Civ.P.12(b)(6) Dismissal:**

A dismissal under Fed.R.Civ.P.12(b)(6) is appropriate "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Yoder v. Honeywell, Inc.,* 104 F.3d 1215, 1224 (10th Cir. 1997)(internal citations omitted), *cert. denied,* 522 U.S. 812, (1997). In considering a motion under this federal rule, the court's function is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted. *Id. (quoting Miller v. Glantz,* 948 F.2d 1562. 1565 (10th Cir. 1991))(quotations omitted).

In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *David v. City & County of Denver,* 101 F.3d 1344, 1352 (10th Cir. 1996). However, relief must plausibly follow from the facts alleged. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 570 (2007). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir. 2008)(internal quotation marks and citation omitted).

### B.  Standard for Vacating Arbitrator's Award:

A district court's review of an arbitration award under the Federal Arbitration Act (FAA), is strictly limited and is a highly deferential standard of review, which has been described as "among the narrowest known to the law." *Bowen v. Amoco Pipeline Co.,* 254 F.3d 925, 932 (10th Cir. 2001). It is recognized that by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration. *Brown v. Coleman Co., Inc.,* 220 F.3d 1180, 1182 (10th Cir. 2000)(quoting *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 31 (1991)(quotations omitted)).

A court may vacate an arbitration award only in the limited circumstances provided in Section 10 of the FAA, or within the few judicially created exceptions. *Denver & Rio Grande Western Railroad Co. v. Union Pacific Railroad Co.,* 119 F.3d 847, 849 (10th Cir. 1997). Section 10(a)(3) does permit a court to vacate an arbitrator's award where the arbitrator improperly refused to postpone a hearing despite sufficient showing of cause. *ARW Explorat'n Corp. v. Aguirre,* 45 F.3d 1455, 1463-64 (10th Cir. 1995). However because a primary purpose of the federal policy favoring arbitration is to promote timely, expeditious dispute resolution, the court's review of an arbitrator's decision not to postpone a hearing is quite limited. *Id.*

### IV   DISCUSSION

Plaintiff claims that: (1) the Arbitrator's decision to "arbitrarily and unilaterally" set the arbitration for a date on which plaintiff had stated it was unavailable impermissibly modified the CBA; (2) the hearing held without plaintiff's attendance constituted an *ex parte* communication which prejudiced plaintiff; (3) the Arbitrator's statements and findings demonstrated an improper bias toward defendant; (4) the Arbitrator's decision to hold the hearing despite plaintiff's objections exceeded her authority; (5) that decision also was outside the scope of her commission

and ignored the parties' scheduling practices; and (6) defendant's "mass grievance and arbitration demands" are a calculated strategy to damage plaintiff's reputation and economic well-being. (ECF Nos. 1 and 35).

Defendant seeks to dismiss plaintiff's second and sixth claims for failure to state a claim. (ECF No. 25). With regard to plaintiff's second claim, defendant argues that a hearing is not *ex parte* when as here, plaintiff participated in the selection of the arbitrator and received adequate notice of the hearing date (as allegedly demonstrated by plaintiff sending a court reporter to record the proceedings despite failing to attend itself), but simply chose not to attend. (ECF No.26, p.3). On plaintiff's sixth claim, defendant argues that because plaintiff failed to utilize the established procedures as set out in their CBA to address its allegations regarding defendant's alleged breach of the CBA, this claim should be dismissed and resolved through provisions of the CBA rather than by this court. (ECF No. 26, pp.7-12).

    1.    Plaintiff's Second Claim:

In examining plaintiff's second claim that the arbitrator engaged in *ex parte* conduct by conducting the arbitration without plaintiff's presence, I view these allegations in the light most favorable to plaintiff. *Yoder,* 104 F.3d at 1224. Stating a claim requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 555 (2007)(quotations omitted).

After careful review of the pleadings and CBA, I note that there is a substantial evidentiary gap regarding what plaintiff's reason for being unavailable on the date selected by the arbitrator was and whether that reason constituted sufficient showing of cause. In other words, whether the arbitrator knew and disregarded a legitimate reason plaintiff may have

offered is not readily evident from the complaint and attached CBA. This evidentiary gap is better suited to resolution subsequent to the court's examination of evidence produced in support of a Motion for Summary Judgment rather than a Motion to Dismiss.

I therefore deny defendant's Motion to Dismiss plaintiff's Second Claim.

2.      Plaintiff's Sixth Claim:

Plaintiff's Sixth Claim against defendant alleges that defendant has engaged in a "calculated strategy, mass grievance filings and arbitration scheduling demands in breach of Article 44 of the CBA" which prohibits "anti-company publicity or other economic action against King Soopers." (ECF No. 1, pp.16-17). Plaintiff asserts that despite the CBA provisions regarding dispute resolution[1], it is not required to grieve its sixth claim in the instant matter because the defendant engaged in self-help and "repudiated the grievance and arbitration process by undermining the parties' scheduling practices." (ECF No.35, pp.13-17). In lieu of dismissal plaintiff contends that the court should stay this portion of the claim pending arbitration. (ECF No. 35, pp.17-18).

Defendant argues that plaintiff has failed to follow the parties' CBA dispute resolution procedures to resolve plaintiff's allegations that defendant has violated CBA provisions contained in Article 44. (ECF No. 26, pp.7-12). Defendant therefore contends that the court should not allow plaintiff to by-pass the CBA provisions but should dismiss plaintiff's Sixth Claim or alternatively compel plaintiff to arbitration regarding its claims that defendant has violated Article 44 of the CBA. (ECF No. 35, pp

---

[1] The CBA contains *inter alia* Article 43 outlining the Dispute Procedure which requires that there "shall be an earnest effort on the part of the parties to settle [any dispute or complaint] promptly through the following steps . . . ." Article 43 specifies the steps the parties shall take to resolve a dispute beginning with a verbal conference, escalating to a written grievance and if those efforts fail, a request for and submission to arbitration to resolve the matter. (ECF No. 1-1, pp.56-57).

When reviewing a motion to dismiss under Fed.R.Civ.P.12(b)(6), a court may "consider documents referred to in the complaint if the documents are central to the plaintiff's claims and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir 2002). In this matter, neither party disputes the authenticity of the CBA, indeed both reference it in their pleadings. (See e.g., ECF Nos.1-1, 1-2, 1-3, 25-2).

Further, there is a liberal federal policy favoring arbitration that is well recognized. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). As arbitration is typically a matter of contract, courts deciding if there is an enforceable agreement to arbitrate, should apply ordinary state-law principles that govern the formation of contracts while giving due regard to the federal policy favoring arbitration. *Volt Info. Sciences, Inc. v. Brd of Trustees*, 489 U.S. 468, 475-76 (1989); see also, *Huizar v. Allstate Ins. Co.*, 952 P.2d 342, 346 (Colo 1998)("Arbitration as a method of alternative dispute resolution is a convenient mode of resolving disputes and is favored by the public policy of Colorado.").

The FAA provides that arbitration agreements may be unenforceable and a court may refuse to enforce an arbitration agreement where "well supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract" are presented. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985)(internal quotations omitted).

In this instance, neither party is asserting that the CBA is or should be deemed unenforceable or that it is fraudulent. Rather, both parties appear to agree that plaintiff's sixth claim against defendant should be resolved if not by the court (as plaintiff desires), then by provisions contained in Article 43 of the CBA, up to and including arbitration.

By its terms, the FAA leaves no place for the exercise of discretion by a district court, instead mandating that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. 9 U.S.C. §§ 3, 4(emphasis added). Additionally there is a strong presumption of arbitrability especially where, as here the clause is broadly written. *AT&T Tech., Inc. v. Communications Workers of America,* 475 U.S. 643, 650 (1986).

In this instance, I find that defendant's Sixth Claim is before the court prematurely. Defendant's Sixth Claim is therefore dismissed without prejudice.

## V. CONCLUSION

For the reasons stated above defendant's Motion to Dismiss (ECF No. 25) is GRANTED IN PART and DENIED IN PART as follows:

(1) DENIED with regard to defendant's Motion to Dismiss plaintiff's Second Claim and

(2) GRANTED with regard to plaintiff's Sixth Claim which is DISMISSED without prejudice.

IT IS SO ORDERED

DATED this 24th day of August, 2015.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge